UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICHARD A. SPANN-EL, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:20-CV-611-MGG |
| BENNET, et al., | |
| Defendants. | |

OPINION AND ORDER

Richard A. Spann-El, a prisoner proceeding without a lawyer, was granted leave to proceed against Officer Madison Easley, Lieutenant Josh Morgan, Captain Robert Bennett, Officer Jonathan Cruz, Unit Team Manager ("UTM") Nathanael Angle, and Deputy Warden Sharon Hawk ("Defendants") in their personal capacity for money damages for denying him sanitary living conditions as required by the Eighth Amendment. (ECF 10.) Specifically, he claims that in July 2020, his cell was flooded with water containing urine and feces for four days. (*Id.*) Defendants now move for summary judgment. (ECF 81.) Mr. Spann-El has responded to the motion (ECF 97), and Defendants have replied thereto (ECF 99). The matter is now ripe for adjudication.

Before turning to the merits of the Eighth Amendment claim, however, the court must address two additional filings by Mr. Spann-El. First, he moves for a preliminary injunction. (ECF 91.) Defendants have filed a response objecting to the motion (ECF 96), and he has filed a reply thereto (ECF 100).

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions— "those requiring an affirmative act by the defendant"—are "cautiously viewed and

sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining the strict limitations on granting injunctive relief in the prison setting).

Some of Mr. Spann-El's handwriting his quite difficult to decipher, but he appears to argue that he is in need of an immediate transfer to a different facility. He claims that his personal property and legal papers have gone missing, including photographs, religious books, documents pertaining to his post-conviction petition, and documents pertaining to civil rights cases he has pending in this District. (ECF 91, 100.) This case pertains to the conditions of Mr. Spann-El's confinement during a four-day period in July 2020 when it was allegedly flooded with water. There is no indication from either his complaint or his present filings that flooding presents an ongoing problem for him, nor was he was granted leave to proceed on a claim for injunctive relief in this case. This court cannot grant him injunctive relief on issues outside the scope of this lawsuit. *See Westefer*, 682 F.3d at 681. The court notes that Mr. Spann-El has sought preliminary injunctive relief in two other pending cases claiming he needs to be transferred to another facility immediately. *See Spann-El v. Miami Correctional Facility*, No. 3:22-CV-450-JD-MGG (N.D. Ind. filed June 10, 2022); *Spann-El v. Miami Correctional*

3

*Facility*, No. 3:22-CV-541-JD-MGG (N.D. Ind. filed July 13, 2022). To the extent he needs relief in those cases, he must seek it in those cases. He has not demonstrated an entitlement to relief in this case based on these arguments.

He also argues that it is a "conflict of interest" to keep him at his current facility because he is suing staff members there. (ECF 91.) That alone is not a basis to grant him the extraordinary remedy of a preliminary injunction. Were it otherwise, a prisoner could effectively obtain a transfer simply by filing suit against a staff member at their current prison. A prisoner cannot be permitted to "engineer" a constitutional violation in this fashion. *Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005). This would also contravene the principle that where best to house a prisoner is a matter on which prison officials are entitled to substantial deference. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

To the extent he is raising issues about his ability to respond to the motion for summary judgment, those issues appear to have been resolved. He states that he lost his copy of the motion for summary judgment, but the court sent him an additional copy in early August 2022 and granted him more time to file a response.[1] (EF 90.) It appears the court's order and the additional copy of the motion may have crossed in the mail with his current filing. In any event, it is evident that he eventually obtained a copy of the motion, because he has filed a response to the motion containing a detailed analysis of

---

[1] He received two extensions, and a total of approximately four months, to file his response to the motion for summary judgment. (*See* ECF 88, 90.)

4

the Defendants' arguments and supporting documentation.[2] (ECF 97.) The court declines to order any relief in connection with his assertions about his personal property, and he has not otherwise demonstrated an entitlement to the extraordinary remedy of an immediate transfer while this case is pending. The motion for a preliminary injunction is denied.

Mr. Spann-El's second filing bears the label, "Motion to Correct Magistrates Response with Evidences and Claims to add to Defendant's Motion for Summary Judgment Response." (ECF 98.) The content of this filing suggests he intended it to supplement his response to the motion for summary judgment. Notwithstanding the labeling, it appears he may have been trying to separate out his legal arguments and his evidence by filing these documents separately. *See* N.D. IND. L.R. 56-1(b). In deference to his pro se status, the court will grant the motion and consider this filing in deciding the motion for summary judgment. With these issues resolved, the court returns to the motion for summary judgment.

Under Federal Rule of Civil Procedure 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 610

---

[2] The court notes that in one of his other pending cases, he has raised similar concerns about his legal documents being confiscated during a move to segregation. *See Spann-El v. Indiana*, 3:20-CV-760-RLM-MGG (N.D. Ind. filed Sept. 10, 2020), ECF 68, 70. At a hearing held in that case on September 2, 2022, Mr. Spann-El represented to this court that had since regained access to his legal documents. (ECF 72.)

(7th Cir. 2018). In deciding whether a genuine dispute of fact exists, the court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (citation omitted). At the summary judgment stage, the court cannot "weigh conflicting evidence" or "make credibility determinations," as this is "the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011) (citations omitted). Instead, the court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to "adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019).

On the subjective prong, the prisoner must show that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. To satisfy this standard, the plaintiff "must demonstrate that the prison officials knew of and disregarded a serious risk to his health or safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

6

exists, and he must also draw the inference." *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (citation, quotation marks, and alteration omitted). The standard "requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk." *Huber v. Anderson*, 909 F.3d 201, 208 (7th Cir. 2018). A prison official's subjective knowledge can be shown by "inference from circumstantial evidence." *Balsewicz v. Pawlyk*, 963 F.3d 650, 655 (7th Cir. 2020). "For example, if an inmate provides evidence that the risk of serious harm was obvious, a factfinder could reasonably infer that the official knew of the risk." *Id.* "Likewise, a factfinder could typically infer an official's knowledge from evidence that the inmate complained to the official" about the issue. *Id.*

In support of their motion for summary judgment, Defendants each submit an affidavit. (ECF 81-1 to ECF 81-6.) UTM Angle attests that at the time of this incident, he "did not have day-to-day interactions with offenders in Housing Unit A" (the segregation unit where Mr. Spann-El was housed) and has no records to show he was notified about flooding in Mr. Spann-El's cell. He also does not "recall" speaking with Mr. Spann-El during this period or anyone telling him about any flooding in Mr. Spann-El's cell. (ECF 81-1 ¶¶ 8-12.) He attests that "staff at the Miami Correctional Facility have expressed concerns that offenders may have been purposefully flooding their cells with water from their toilet in order to get out of their cells more frequently," and that staff "cannot reward" this practice by letting them out of their cells. (*Id.* ¶¶ 17-18.)

Captain Bennett, in turn, attests that he does "not recall interacting with the Plaintiff. . . about any incident involving his toilet or flooding in his cell," nor does he

7

"recall ever being made aware that Mr. Spann-El was experiencing issues with his toilet or with flooding in his cell." (ECF 81-2 ¶¶ 5-6.) Officer Cruz likewise attests that he does not "remember having any interactions with Mr. Spann-El about any issue that he had with his toilet or flooding in his cell in July of 2020." (ECF 81-3 ¶ 6.) Deputy Warden Hawk, now retired, similarly attests that she "did not have contact with offenders housed in the segregated housing units at Miami Correctional Facility" during this period and does "not recall having any interactions with Offender Richard Spann-El about his toilet or flooding in his cell." (ECF 81-5 ¶¶ 5-6.)

By contrast, Officer Easley does remember speaking with Mr. Spann-El about water in his cell. However, as she describes the incident, Mr. Spann-El told her that "water had spilled from the toilet in his cell." (ECF 81-4 ¶ 7.) She looked in and saw some water on his floor but "did not see feces in the water." (*Id.* ¶ 10.) She further attests that she offered Mr. Spann-El a mop and other cleaning supplies but he refused them. (*Id.* ¶¶ 11-14.) As for Lieutenant Morgan, he also does not "remember" speaking to Mr. Spann-El about this issue specifically, but he does recall an incident occurring in July 2020 wherein "several offenders intentionally flooded their cells with water[.]" (ECF 81-6 ¶¶ 5-7.) He attests that when this happened, "staff worked to ensure that these cells were cleaned quickly." (*Id.* ¶ 8.)

Mr. Spann-El paints a vastly different picture of this incident.[3] He attests that the July 2020 incident did not involve a mere puddle of water in his cell, nor was it caused

---

[3] Mr. Spann-El swears to the facts set forth in his response and the "Motion to Correct" under penalty of perjury. (ECF 97 at 1; ECF 98 at 1.)

8

by him trying to flood his toilet. Rather, he attests that due to the "pipes being backed up" in a certain area of the prison, the "entire bottom range of A-alpha" dormitory flooded with approximately 2 inches of sewer water that covered the floor for days.[4] (ECF 97, 98.) He attests that there was fecal matter floating in the water and that it had a foul odor, readily discernible to anyone present in the dormitory, including staff members. (*Id.*) He further attests that Lieutenant Morgan, Captain Bennett, Officer Cruz, and Deputy Warden Hawk were all physically present in the dormitory at some point during this period, and he specifically recalls Deputy Warden Hawk "coming on the dormitory one day just looking [at] everything." (ECF 98 at 2.) He attests that UTM Angle was also present in the dormitory handing out hygiene kits and tried to squeegee some of the water into the drains without success. (ECF 97 at 2; ECF 98 at 3.) He also attests that for days Officers Cruz and Easley "would come around passing out 'chow' pushing the charts through the contaminated water." (ECF 98 at 3.) He attests that he and multiple other inmates repeatedly asked these staff members to be moved out of the dormitory due to these extreme conditions, but their response was that no one could be moved, even though he claims another part of the prison had available space during this period. (ECF 98 at 3.)

There is a clear "swearing contest" between the parties about whether Defendants were deliberately indifferent to Mr. Spann-El's right to be housed under sanitary conditions of confinement. Notably, all but one of the Defendants attest that

---

[4] He submits a piece of a comb to show the estimated depth of the water, and this piece measures approximately two inches. (*See* ECF 98-2 at 1.)

9

they do not remember speaking with Mr. Spann-El about flooding in his cell. Attesting that one does not *recall* something occurring is not the same as attesting that it did not occur. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002) (plaintiff's affidavit attesting that she did "not recall" seeing a brochure did not refute defendant's evidence that the brochure was sent to her). But even if the court reads these affidavits as stating that the flooding did not occur, Mr. Spann-El swears otherwise. By his account, the flooding was so severe that it covered the entire floor of the dormitory with two inches of water containing fecal matter that remained there for days, giving off a foul odor and requiring staff members to walk through it. Defendants point to the lack of official records about any incident of large-scale flooding (ECF 83 at 8-9), but the absence of records does not directly refute Mr. Spann-El's account based on his own personal knowledge. He attests that all of the Defendants were physically present in the dormitory at one point or another during the flooding and saw what was happening, but left him and the other inmates in these conditions for four days.[5] Whose account is more credible is not something that can be determined at the summary judgment stage. Instead, a jury must make that determination. *Omnicare*, 629 F.3d at 704-05.

As for Officer Easley, she attests that the flooding was not severe and did not involve water containing feces, but Mr. Spann-El refutes this. He attests that she is describing an entirely different incident wherein a small bit of water flooded from his

---

[5] Defendants point to difficulties experienced by staff during this period due to the COVID-19 pandemic, but they do not submit evidence showing that it was impossible to move Mr. Spann-El for this reason; rather, their argument is that no flooding on the scale described by Mr. Spann-El ever occurred.

10

toilet. In their reply, Defendants argue that Mr. Spann-El is trying to change the scope of his claims by suing over this other incident. (ECF 99 at 1-2.) It appears they have misread his filing. He makes clear he is suing about the July 2020 incident. He argues, in effect, that Officer Easley is either lying or misremembering the events of July 2020. In support, he submits his own account and internal complaints he filed, one about the July 2020 flooding of the dormitory, and the other about a December 2020 incident in which Officer Easley allegedly would not give him adequate cleaning supplies after his toilet flooded. (ECF 98-1 at 1-2.) He claims Officer Easley was well aware of the severe flooding in July 2020 because she had to push a food cart through the water for days. (ECF 98 at 3.) Whose account is more credible is not an issue that can be decided by this court on a motion for summary judgment. *Omnicare*, 629 F.3d at 704-05.

Defendants argue that they are entitled to qualified immunity "because they did not violate any right that was clearly established in July of 2020." (ECF 83 at 1.) "Under the doctrine of qualified immunity, government officials are liable for civil damages . . . only when their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Balsewicz*, 963 F.3d at 656 (citations and internal quotation marks omitted). "Whether an official is entitled to qualified immunity on a motion for summary judgment turns on whether the plaintiff has both (1) alleged that the official committed acts violating a clearly established right and (2) adduced evidence sufficient to create a genuine issue as to whether the official in fact committed those acts." *Id.* (internal quotation marks and alteration omitted).

11

As outlined above, Mr. Spann-El's account is that he was forced to live in a cell flooded with two inches of water containing feces and urine for four days. He has come forward with sufficient evidence to create a genuine issue of fact about whether the conditions existed and whether Defendants knew about them. On these facts, Defendants are not entitled to qualified immunity. *Taylor v. Riojas*, 141 S. Ct. 52 (2020) (holding that it was clearly established as of 2013 that the Eighth Amendment was violated when an inmate was held in a cell containing raw sewage for six days); *Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019) (recognizing clearly established right of inmates "not to be forced to live surrounded by their own and others' excrement"); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (defendants were not entitled to qualified immunity where inmate claimed the floor of his cell was covered with water, the sink and toilet did not work, and the walls were smeared with blood and feces for six days); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (reversing summary judgment for defendant where evidence showed inmate was housed for three days in a cell containing feces). Therefore, the case must proceed to trial.

For these reasons, the court:

(1) DENIES the plaintiff's motion for a preliminary injunction (ECF 91);

(2) GRANTS the plaintiff's "Motion to Correct Magistrates Response with Evidences and Claims to add to Defendant's Motion for Summary Judgment Response" (ECF 98), to the extent that this filing was considered in ruling on the motion for summary judgment; and

(3) DENIES the Defendants' motion for summary judgment (ECF 81).

SO ORDERED on September 20, 2022

s/ Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge